# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE FRAGRANCE DIRECT PURCHASER ANTITRUST LITIGATION** | Civil Action No. 23-02174 (WJM) (JSA) |
| **IN RE FRAGRANCE INDIRECT PURCHASER ANTITRUST LITIGATION** | Civil Action No. 23-03249 (WJM) (JSA) |
| **IN RE FRAGRANCE END-USER PLAINTIFF ANTITRUST LITIGATION** | Civil Action No. 23-16127 (WJM) (JSA) |

## PLAINTIFFS' COMBINED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL <u>JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)</u>

Joseph J. DePalma
LITE DEPALMA
GREENBERG
& AFANADOR, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000
jdepalma@litedepalma.com

James E. Cecchi
CARELLA BRYNE CECCHI
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com

Michael D. Fitzgerald
LAW OFFICES OF
MICHAEL D. FITZGERALD
1 Industrial Way West, Unit B
Eatontown, NJ 07724
P.O. Box 1067
Oakhurst, NJ 07755
(202) 349-1482
mdfitz@briellelaw.com

*Liaison Counsel for Plaintiffs and the Proposed Classes*

**TABLE OF CONTENTS**

| Section | Page(s) |
|---|---|
| TABLE OF AUTHORITIES | iii |
| I. INTRODUCTION | 1 |
| II. STATEMENT OF FACTS | 2 |
| A. Firmenich Defendants | 3 |
| B. Givaudan | 8 |
| C. Symrise | 13 |
| D. FSAC | 16 |
| III. RULE 12(b)(2) STANDARDS | 18 |
| IV. ARGUMENT | 20 |
| A. THE COURT HAS SPECIFIC JURISDICTION OVER THE DEFENDANTS | 20 |
| 1. Federal Rule of Civil Procedure 4(k)(2) and the Specific Jurisdiction Requirements Are Satisfied | 20 |
| a. The Claim Arises Under Federal Law and the Moving Defendants Are Not Subject to Jurisdiction in Any State Court of General Jurisdiction | 21 |
| b. The Defendants Have Sufficient Contacts with the U.S. | 22 |
| c. Asserting Personal Jurisdiction Comports with Due Process | 23 |
| i. Purposeful Direction | 23 |
| — Firmenich Defendants | 24 |
| — Givaudan | 27 |
| — Symrise | 29 |
| ii. The *Calder* "Effects" Test. | 29 |

i

— Firmenich Defendants ....................................................................31

— Givaudan...........................................................................................34

— Symrise ............................................................................................35

iii.    Plaintiffs' Claims Relate to the Defendants' Forum Directed
Contact ..................................................................................35

— Firmenich Defendants ....................................................................35

— Givaudan...........................................................................................37

— Symrise ............................................................................................38

2.    Moving Defendants fail to satisfy the heavy burden of
demonstrating that the Court's exercise of personal jurisdiction
is unreasonable..................................................................................39

B.  THE DEFENDANTS ARE SUBJECT TO SPECIFIC JURISDICTION
UNDER THE THEORY OF "AGENCY" ......................................................43

C.  "CONSPIRACY" JURISDICTION ...........................................................45

D.  THERE IS NO IMPERMISSIBLE GROUP PLEADING.........................47

E.  ALTERNATIVELY, THE COURT SHOULD GRANT
JURISDICTIONAL DISCOVERY ...........................................................50

V.  CONCLUSION ...................................................................................51

## TABLES OF AUTHORITIES

**Case**                                                                                          **Page(s)**

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
  480 U.S. 102 (1987)..............................................................................24, 28, 43

*In re Auto. Refinishing Paint Antitrust Litig.*,
  358 F.3d 288 (3d Cir. 2004) ..............................................................................20

*Bachmann Software & Servs. v. Intouch Grp., Inc.*,
  2008 WL 2875680 (D.N.J. July 22, 2008) ........................................................28

*Baskin v. Pierce & Allred Constr., Inc.*,
  676 S.W.3d 554 (Tenn. 2023) ............................................................................36

*Beychok v. Baffert*,
  2024 WL 685551 (D.N.J. Feb. 20, 2024) ..........................................................23

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco
  Cnty.*,
  582 U.S. 255 (2017)........................................................................................35, 39

*In re Bulk (Extruded) Graphite Prod.*,
  2007 WL 2212713 (D.N.J. July 30, 2007) ....................................................31, 33

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)............................................................................................29

*Calder v. Jones*,
  465 U.S. 783 (1984)......................................................................................*passim*

*In re Capacitors Antitrust Litig.*,
  2015 WL 3638551 (N.D. Cal. June 11, 2015).....................................................37

*Carrado v. Daimler AG*,
  2018 WL 4565562 (D. Colo. Sept. 24, 2018)......................................................49

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. CV 07-5944-SC, 2014 WL 2581525 (N.D. Cal. June 9, 2014)...................37

*In re Chocolate Confectionary Antitrust Litig.*,
  602 F. Supp. 2d 538 (M.D. Pa. 2009)............................................................35, 36

*Colvin v. Van Wormer Resorts, Inc.*,
    417 F. App'x 183 (3d Cir. 2011) ......................................................................42

*DCM Grp. Inc. v. Raina*,
    2022 WL 3588076 (D.N.J. Aug. 19, 2022) ......................................................25

*In re Diisocyanates Antitrust Litig.*,
    2020 WL 1140245 (W.D. Pa. Mar. 9, 2020)..........................................34, 35, 46

*Dudhwala v. Choice Hotels Int'l Servs. Corp.*,
    2022 WL 4300219 (D.N.J. Sept. 19, 2022)......................................................18

*In re Duramax Diesel Litig.*,
    298 F. Supp. 3d 1037 (E.D. Mich. 2018) ...................................................49, 50

*Early Learning Res., LLC v. Sebel Furniture Ltd.*,
    2011 WL 4593775 (D.N.J. Sept. 30, 2011).......................................................21

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009) ...............................................23, 25, 43, 44

*In re Fasteners Antitrust Litig.*,
    2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) ...................................................32

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021).................................................................*passim*

*Galloway v. Martorello*,
    2023 WL 5183204 (E.D. Va. Aug. 11, 2023) ...................................................47

*Gray v. BMW of N. Am., LLC*,
    2014 WL 4723161 (D.N.J. Sept. 23, 2014)................................................48, 49

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) .......................................................................41

*Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*,
    253 F. Supp. 3d 1115 (D. Or. 2017) ...............................................................38

*Imo Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ....................................................................30, 31

iv

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
2018 WL 4144683 (D.N.J. Aug. 29, 2018) ........................................................47

*Kentex Asia Ltd. v. ATT S. Inc.*,
2017 WL 4071389 (M.D. Pa. Sept. 14, 2017)....................................................32

*LaSala v. Marfin Popular Bank Pub. Co.*,
410 F. App'x 474 (3d Cir. 2011) ..................................................................46, 47

*Lewis v. Mercedes-Benz USA, LLC*,
530 F. Supp. 3d 1183 (S.D. Fla. 2021)..............................................................45

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015) ...............................................................................19

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) .............................................................................28

*M&B IP Analysts, LLC v. Cortica-US, Inc.*,
2020 WL 3411027 (D.N.J. June 22, 2020)........................................................40

*MaxLite, Inc. v. ATG Elecs., Inc.*,
193 F. Supp. 3d 371 (D.N.J. 2016)....................................................................30

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*,
960 F.2d 1217 (3d Cir. 1992) ............................................................................19

*Merkin v. Honda N. Am., Inc.*,
2017 WL 5309623 (D.N.J. Nov. 13, 2017) ........................................................48

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009) .......................................................................18, 50

*In re Mid-Atlantic Toyota Antitrust Litig.*,
525 F. Supp. 1265 (D. Md. 1981), *aff'd,* 704 F.2d 125 (4th Cir.
1983) ..................................................................................................................33

*Murphy v. Eisai, Inc.*,
503 F.Supp.3d 207 (D.N.J. 2020)......................................................................19

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) ......................................................................*passim*

*Ogden v. GlobalSantaFe Offshore Servs.*,
  31 F. Supp. 3d 832 (E.D. La. 2014)......................................................................21

*Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander*
  *(Mexico) S.A. Institucion de Banca Multiple*,
  92 F.4th 450 (2d Cir. 2024) ...............................................................................37

*Opheim v. Volkswagen Aktiengesellschaft*,
  2021 WL 2621689 (D.N.J. June 25, 2021).....................................................41, 50

*Patel v. Patel*,
  2023 WL 8929199 (D.N.J. Dec. 27, 2023).........................................................30

*Patt v. Volkswagen Grp. of Am., Inc.*,
  2023 WL 5224294 (S.D. Fla. Aug. 15, 2023) ........................................25, 26, 45

*Philadelphia Contribution Ship Ins. Co. v. Neoteric Sols. Inc.*,
  2016 WL 791427 (D.N.J. Feb. 5, 2016) .............................................................51

*Pietrangelo v. Refresh Club, Inc.*,
  2023 WL 6388880 (D.D.C. Sept. 29, 2023).......................................................18

*In re Platinum & Palladium Antitrust Litig.*,
  61 F.4th 242 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024) ......................46

*Redi-Data, Inc. v. Spamhaus Project*,
  2022 WL 3040949 (D.N.J. Aug. 2, 2022) ..........................................................18

*Rickman v. BMW of N. Am. LLC*,
  538 F. Supp. 3d 429 (D.N.J. 2021)....................................................26, 36, 45, 51

*Rudersdal v. Harris*,
  2022 WL 263568 (S.D.N.Y. Jan. 28, 2022) .......................................................47

*Schork Grp., Inc. v. Choice! Energy Servs., Retail, LP*,
  2022 WL 2905231 (E.D. Pa. July 21, 2022) ......................................................47

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
  22 F.4th 103 (2d Cir. 2021) ...............................................................................46

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
  277 F. Supp. 3d 521 (S.D.N.Y. 2017) ................................................................26

vi

*In re Subaru Battery Drain Prod. Liab. Litig.*,
  2021 WL 1207791 (D.N.J. Mar. 31, 2021) ....................................................48

*Symrise AG v. Inolex Investment Corp.*,
  2023 WL 6199162 (PTAB Sept. 22, 2023) .....................................................15

*Tivoli LLC v. Targetti Sankey S. P. A.*,
  2015 WL 12683801 (C.D. Cal. Feb. 3, 2015) .................................................49

*Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*,
  2008 WL 65177 (D.N.J. Jan. 2, 2008)...............................................30, 32, 33

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.
  Litig.*,
  2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) .................................................21

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017)...................................................48, 49

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013), *aff'd*, 575 U.S. 373 (2015)...............................32

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)........................................................................................24

*Yagudayev v. BMW of N. Am., LLC*,
  2020 WL 6689799 (D.N.J. Nov. 13, 2020) .....................................................50

*Yu-Chin Chang v. Upright Fin. Corp.*,
  2020 WL 473649 (D.N.J. Jan. 28, 2020)........................................................48

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) ......................................................40, 43

**Statutes**

Clayton Act, 15 U.S.C. § 22 ...............................................................................34

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 4(k)(2)............................................................................... *passim*

Fed. R. Civ. P. 8 ............................................................................................48, 49

Fed. R. Civ. P. 8(a)(1) ........................................................................................19

Fed. R. Civ. P. 9(b) ......................................................................................33, 48

Fed. R. Civ. P. 12(b)(2) ..........................................................................1, 18, 34, 47

Fed. R. Civ. P. 12(b)(5)...........................................................................................1

**Other Authorities**

PROCEDURAL ASPECTS OF PERSONAL JURISDICTION, 4 Fed. Prac. &
    Proc. Civ. § 1067.6 (4th ed.)..............................................................................19

## I.    INTRODUCTION

Direct Purchaser Plaintiffs, End User Plaintiffs, and Producer Indirect Purchasers (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the motions of Defendants DSM-Firmenich AG, Firmenich International SA, and Firmenich SA (collectively, "Firmenich Defendants" or "Firmenich"), Givaudan SA ("Givaudan"), and Symrise AG ("Symrise") (collectively, "Moving Defendants") to dismiss the Consolidated Class Action Complaints[1] pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure.

This Court has specific personal jurisdiction over the Moving Defendants under Fed. R. Civ. P. 4(k)(2) and applicable precedent.  Plaintiffs demonstrate that (1) their claims arise under federal law; (2) Moving Defendants are not subject to jurisdiction in any state court; (3) Moving Defendants have sufficient contacts with the United States ("U.S.") as a whole; and (4) exercising jurisdiction over the Moving Defendants comports with Due Process.  Plaintiffs also plausibly allege and provide evidence that the Moving Defendants purposefully directed their conduct at the U.S. and New Jersey through their extensive involvement in developing,

---

[1] As used herein, "Complaints" refers collectively to the Direct Purchasers' Consolidated Complaint ("DPPC") (No. 23-cv-02174, ECF No. 107), the Producer Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint ("IPPC") (No. 23-cv-03249, ECF No. 43), and the End-User Plaintiffs' Consolidated Class Action Complaint ("EUPC") (No. 23-cv-16127, ECF No. 38).

manufacturing, pricing, marketing, and selling Fragrance Products.

Plaintiffs also satisfy the *Calder* "Effects" test. The Moving Defendants' anti-competitive acts were intentional. Plaintiffs felt the brunt of the harm in the U.S. and New Jersey, and the Moving Defendants expressly aimed their conduct at this forum.

Additionally, Plaintiffs demonstrate that their claims relate to the Moving Defendants' forum-directed conduct: that personal jurisdiction over the Moving Defendants is proper based on "agency" and "conspiracy" jurisdiction; and that this Court's exercise of jurisdiction would not be unreasonable. The Moving Defendants' arguments that Plaintiffs engaged in impermissible group pleading and fail to plead specific facts are unpersuasive and contrary to applicable law.

Alternatively, if the Court finds that Plaintiffs have not established personal jurisdiction over the Moving Defendants, the Court should permit Plaintiffs to conduct jurisdictional discovery as their basis for personal jurisdiction is not clearly frivolous.[2]

## II.    STATEMENT OF FACTS

"Defendants collectively sell billions of dollars worth of fragrance ingredients and/or compounds in the United States each year." DPPC ¶ 55; IPPC ¶ 73; EUPC ¶

---

[2] Plaintiffs have not addressed Firmenich's argument regarding service on Firmenich SA because the parties have agreed to a stipulation that dismisses Firmenich SA from this matter without prejudice. That stipulation is being filed concurrently with this opposition brief. References to "Moving Defendants" or "Firminech Defendants" hereinafter do not include Firmenich SA.

2

109. "Fragrance ingredients and fragrance compounds that Defendants produce are sold to Plaintiffs and the Class for use in consumer products." DPPC ¶ 56; IPPC ¶ 74; EUPC ¶ 94. The fragrance market in the U.S. is "exceptionally concentrated." DPPC ¶ 75; IPPC ¶ 105; EUPC ¶ 129. Through a series of acquisitions of smaller rivals, Defendants collectively control approximately two-thirds of the U.S fragrance market. DPPC ¶¶ 70-75, IPPC ¶¶ 98-105, EUPC¶¶ 124-129.

**A.    Firmenich Defendants**

The Firmenich Defendants have "extensive operations throughout the United States," and have "manufactured and/or sold Fragrance Products to purchasers in the United States." DPPC ¶¶ 25-28; IPPC ¶ 28-29; EUPC ¶ 80-81.[3] Article 2 of DSM Firmenich AG's Articles of Incorporation describes its broad scope of operations:

> The purpose of [Firmenich AG] is to purchase, organize and manage companies active in the research, development, manufacture, trade and/or provision of products and services in the fields of . . . perfumes, scents, as well as any other activities structural or incidental to or supportive to the aforementioned fields of activities, in the widest sense.

Exhibit F-1 to the Declaration of James E. Cecchi, executed June 7, 2024 ("Cecchi Decl."). Regulation 3.4 of Firmenich's Organizational Regulations of its Board of

---

[3] On May 9, 2023, Firmenich International SA announced the completion of its merger with DSM to establish DSM-Firmenich AG. *See* https://www.firmenich.com/company/press-release/firmenich-completes-merger-equals-dsm.

Directors ("FORS") outlines its supervision and monitoring of its subsidiaries:

> [Firmenich AG] is a holding company which directly or indirectly owns a global group of subsidiaries that conduct its business operations (the 'Business'). The Board shall supervise and monitor the Group's activities to ensure proper functioning of the Business in the best interests of the Company.

*Id*. at Ex. F-3 (emphasis deleted). The term "Group" is defined to include "all [of Firmenich AG's] subsidiaries." Cecchi Decl., Ex. F-2. Additionally, Firmenich's CEOs "are responsible for overseeing the operational management of the Group." *Id*. at Ex. F-4.

Firmenich has extensive operations in the U.S. and "major sites" in New Jersey:

> Firmenich develops and supplies more than 45,000 different fragrances, aromas, and specialty chemicals components, including a list of some 800 patented chemicals. Headquartered in Geneva, Switzerland, *Firmenich operates sales and manufacturing sites in 50 countries worldwide, including major sites in New York City and New Jersey*….

Cecchi Decl., Ex. F-5 (emphasis added). Firmenich's U.S. expansion began in the mid-1980s, "starting with its 1985 or 1986 acquisition of Chem Fleur, located in Newark, New Jersey, which formed the basis of the group's operations in the crucial United States market." *Id*. The New Jersey-based acquisition led to an increase of $15 million in sales at Firmenich. Cecchi Decl., Ex. F-6, at 15.

In 2005, Firmenich acquired Noville, Inc., a U.S. perfume and flavors company located in Hackensack, New Jersey. *Id*. at Ex. F-7. Firmenich's CEO at the

4

time, Patrick Firmenich, explained Noville would solidify Firmenich's U.S. operations: "The acquisition of [Noville] matches our commercial strategy and represents an excellent cultural fit. . . . It allows us to reinforce our position in major U.S. market segments and to access important new clients." *Id*.

In July 2017, Firmenich International SA acquired another New Jersey-based fragrance company, Agilex Flavors and Fragrances, headquartered in Piscataway, New Jersey. Agilex is registered to do business in New Jersey, *id*. at Ex. F-9, manufactures products in New Jersey and California, and is a leading provider of fragrance compounds and delivery systems to mid-size U.S. customers. *Id*. at Ex. F-8. In May 2018, Firmenich acquired Natural Flavors, another New Jersey-based company, headquartered in Newark. DPPC ¶ 73; IPPC ¶ 103; EUPC ¶ 127. In a statement issued from its Swiss headquarters, Firmenich SA promoted the acquisition as a further expansion of its U.S. operations: "Firmenich expands presence in the United States [-] West Coast to Offer Tailored Taste & Nutrition Solutions." *Id*. at Ex. F-10.

Firmenich's operations in New Jersey continue to grow to this day. As recently as March 2024, DSM-Firmenich opened a new pilot plant in Plainsboro, New Jersey. *Id*. at Ex. F-11. "The facility is said to offer a full range of capabilities and equipment to help customers move from development on the benchtop to small scale-up production in the pilot plant that will inform and accelerate final large-

5

scale production." *Id.*

Currently, Firmenich's website states it maintains 25 manufacturing sites and 83 facilities worldwide, enabling Firmenich to operate "in over 100 markets." *Id.* at F-12. Firmenich has six manufacturing sites in the U.S.; two in New Jersey and one each in Florida, California, Minnesota and Missouri.  *Id.*  One of its New Jersey plants produces Habanolide®—a perfumery substance known as musk. *Id.* at F-13. Firmenich's list of "Our Locations – Firmenich" includes 20 locations in the U.S; the list is attributed to "Firmenich SA – All Rights Reserved." *Id.* at Ex. F-12. Further, Romer Labs, Inc., a subsidiary of DSM-Firmenich, also operates out of Newark, New Jersey (and Missouri). *Id.* at Ex. F-14.

In addition to its extensive locations and operations in the U.S., Firmenich International SA has applied for and received many fragrance-related U.S. patents, an exclusive intellectual property right conferred by the U.S. government. From 2005 to 2015, Firmenich received 34 fragrance-compound patents and 170 utility patents in the U.S. *Id.* at Ex. F-15, at 4. Firmenich also has several patent pending applications in the U.S., many of which list Firmenich's employees in Plainsboro, New Jersey as inventors.[4] Firmenich has also litigated its patents in the U.S. courts. *See Firmenich SA v. Rea,* Complaint, 2013 WL 3212026 (E.D. Va. Filed June 14,

---

[4] *See* https://ppubs.uspto.gov/pubwebapp/static/pages/ppubsbasic.html; https://www.onscope.com/ipowner/en/owner/ip/1535072-firmenich-international-sa.html (last visited June 6, 2024).

2013); *Firmenich v. Kappos*, Complaint, 2013 WL 326786 (E.D. Va. Filed Jan. 11, 2013).

Firmenich regularly ships its fragrance-related products into the U.S., including to Firmenich, Inc., and its top ports of destination are New York, New Jersey, Maryland, Puerto Rico, and South Carolina. Cecchi Decl., Ex. F-16.

Patrick Firmenich joined Firmenich in 1990, starting in the Fine Fragrance Division in Paris. *Id*. at Ex. F-17. In 1993, Mr. Firmenich "moved to New York and was named Vice President of Fine Fragrance North America where he played a vital role in building both a tour-de-force team of perfumery talent as well as deep and enduring customer relationships." *Id.* He was named CEO of Firmenich SA in 2002. *Id.* at Ex. F-18.

Another senior U.S. employee, Jerry Vittoria, ran DMS-Firmenich's North American Fine Fragrance division from New York before he was appointed President of Fine Fragrance Worldwide at DSM Firmenich in 2017. *Id.* at Ex. F-19. "Under his leadership, Firmenich DSM regained its foothold in the North American Fine Fragrance market." *Id*.

DSM Firmenich's website lists 102 employment positions in the U.S., including senior marketing and sales positions in Princeton and Piscataway, New Jersey. *Id*. at Ex. F-20. On a recruiting website, DSM Firmenich has 116 posted employment positions in the U.S., including for senior roles like "Global Head of

7

Commerce," "Senior Commercial Manager," "Senior Manager - Pricing Office," "Pricing Senior Analyst," "Senior Manager Portfolio & Business Growth North America," "Senior Commercial Development Manager," and "Consumer Experience Content Manager." *Id*. at Ex. F-21.

Firmenich's U.S. website is also managed and "published by Firmenich SA," *id.* at Ex. F-22, which uses cookies to send "advertising and marketing-related materials" to U.S. visitors. *Id*. at Ex. F-24. DSM-Firmenich similarly uses its U.S. website to "deliver services" and "market information about our company and our (new) products or services" to U.S. customers. *Id*. at Ex. F-23.

**B.    Givaudan**

In a bid to avoid jurisdiction, Givaudan SA claims it is a "holding company" with "no operational activities" whose "primary function is to manage its investments in its subsidiaries." Declaration of Roberto Garavagno, ECF No. 136-2 ("Garavagno Decl."), ¶ 8). This is false. As set forth below, Givaudan SA conducts substantial activities within the U.S., which confer personal jurisdiction.

Givaudan's Articles of Incorporation outline a much broader scope of corporate operation, which include: "open[ing] branches and subsidiaries"; acquir[ing] participations in other companies"; "acquir[ing], hold[ing], exploit[ing] and sell[ing] real estate and intellectual property rights"; and "engag[ing] in and carry[ing] out any commercial, financial or other activities which are related to the

8

purpose of the corporation." Articles of Incorporation, Cecchi Decl., Ex. G-1 at Article 2 ¶¶1, 3-5.

To facilitate these activities, Givaudan utilizes a seven member board of directors, which oversees the strategy, acquisitions, and major investments of Givaudan and its subsidiaries:

> The Board of Directors is responsible for the ***ultimate direction, strategic supervision and control*** of the management of the Company … includ[ing] ***establishment of*** medium- and ***long-term purpose, strategies and of directives*** defining Company policies and the ***giving of the necessary instructions*** in areas such as ***acquisitions, major investments and long-term financial commitments*** exceeding certain thresholds.

Givaudan 2023 Governance, Compensation and Financial Report at 18 (emphasis added), Cecchi Decl., Ex. G-2. The board members are assigned to four oversight committees. The Innovation Committee, for example, "[i]dentifies opportunities, proposes and screens potential innovation partners, including innovation to advance sustainability and the nature pillar of the purpose ambitions." *Id*. at 17. These partners include several U.S. companies with which Givaudan has entered into strategic partnerships or ownership agreements.

When disputes have arisen with its U.S. partners, Givaudan chooses to enforce its rights in U.S. courts, where it represents itself as a fragrance "manufacturer," not as a mere holding company. In *Givaudan SA v. Conagen Inc.*, No. 18-cv-03588 (JGK) (S.D.N.Y.), for example, Givaudan sued Conagen, a Massachusetts

corporation, with which it had various "investment, licensing, and technology commercialization arrangements" and had invested $10 million for a five-percent equity interest. Amended Complaint, ¶¶ 3, 13, Cecchi Decl., Ex. G-3. Givaudan's complaint described itself as "a ***manufacturer*** of flavors, fragrances, and active cosmetic ingredients," contrary to its denials here. *Id.* at ¶ 1 (emphasis added). Givaudan also has partnered with Phyto Tech Corp., a California corporation, to govern BGN Tech LLC [], a Delaware limited liability company. *Id.* ¶ 10.

Givaudan also has a long track record of acquiring U.S. companies, particularly those in New Jersey.

- In 2016, Givaudan acquired Spicetec Flavors & Seasonings from ConAgra Foods, which had several locations, including in Cranbury, NJ, for $340 million. *Givaudan completes the acquisition of Spicetec Flavors & Seasonings from ConAgra Goods*, July 19, 2016, https://www.givaudan.com/media/media-releases/2016/givaudan-completes-acquisition-spicetec-flavors-seasonings-conagra-foods.

- Givaudan acquired Activ International in 2017, which has a location in Somerset, NJ. *Givaudan acquires Activ International*, January 16, 2017, https://www.givaudan.com/media/media-releases/2017/givaudan-acquires-activ-international. While terms of the deal were not disclosed, the acquisition would have represented approximately ₣40 million of incremental sales to Givaudan's results in 2016 on a proforma basis.

- In 2020, Givaudan acquired Ungerer & Company, which was headquartered in New Jersey and has "an impressive local and regional customer presence for both flavours and fragrances in North America". *Givaudan completes acquisition of Ungerer*, February 20, 2020, https://www.givaudan.com/media/media-releases/2020/givaudan-completes-acquisition-ungerer.   While terms of the deal were not disclosed, the acquisition would have represented approximately $250

million of incremental sales to Givaudan's results in 2019 on a proforma basis.

- In 2021 "[a]s part of its 2025 strategy to expand the capabilities of its fragrance business," Givaudan acquired Custom Essence, "a family owned business based in New Jersey, USA … [which] won the loyalty of a large base of customers for whom they have created some of the leading consumer preferred fragranced products in the USA." *Givaudan completes the acquisition of Customer Essence*, December 3, 2021, https://www.givaudan.com/media/media-releases/2021/givaudan-completes-acquisition-custom-essence. While terms of the deal were not disclosed, the acquisition would have represented approximately $40 million of incremental sales to Givaudan's results in 2020 on a proforma basis.[5]

Indeed, Givaudan has long targeted New Jersey as the focal point of its U.S. operations. In 2008, Givaudan invested $62 million to create a Consumer Products Fragrance Creative Centre in East Hanover, New Jersey, to "support Givaudan's goal to *further gain market share* in all consumer product categories." *New Consumer Products Fragrance Creative Centre operational*, January 13, 2009, https://www.givaudan.com/media/media-releases/2009/new-consumer-products-fragrance-creative-centre-operational (emphasis added).[6] Givaudan ships Fragrance

---

[5] Even if these acquisitions were made by one of its subsidiaries, and not by Givaudan itself, there is no doubt that such large acquisitions were made as part of Givaudan's long-term strategic plans and the specific targeting of these New Jersey-based companies would have required the express approval of Givaudan.

[6] Givaudan's "Global privacy notice" provides that it collects and uses personal data from visitors to its website to "[s]end . . . marketing communications and newsletters about our activities and products that may be of interest to you in the course of our business relationship . . . ." https://www.givaudan.com/legal/global-privacy-notice-condensed (last visited June 6, 2024).

11

Products to the U.S., including to Newark, New Jersey.  Cecchi Decl., Ex. G-7.

Givaudan also relies heavily on the U.S. Patent and Trademark Office. Givaudan itself (not subsidiaries) owns approximately 275 U.S. trademarks and has been assigned over 500 U.S. patents. *See* Search Results for Trademarks and Patents, Cecchi Decl., Ex. G-4. Likewise, Givaudan itself (not subsidiaries) leverages its U.S. intellectual property, through litigation before the Trademark Trial and Appeal Board and the Patent Trial and Appeal Board. Cecchi Decl., Ex. G-5.

Givaudan's recruiting materials further describe it as a U.S. fragrance manufacturer with major operations in New Jersey. Givaudan's job posting for Operations Director, for example, states "In the USA, we develop, market and produce a wide array of solutions from our 25 most innovative sites, based across the country." *See* Sample Job Postings, Cecchi Decl., Ex. G-6. The posting further notes that the Mount Olive, New Jersey plant "is the second largest Fragrance & Beauty compounding site across the global footprint." These job postings are from Givaudan itself, not its subsidiaries. Garavagno Decl. ¶ 9.[7]

Far from a passive holding company, Givaudan is the driving force behind its corporate family's U.S. operations, including investments to expand fragrance

---

[7] Numerous job openings in New Jersey at Givaudan are also listed on Indeed.com, including a position as a "Sales Coordinator." https://www.indeed.com/q-givaudan-l-new-jersey-jobs.html?vjk=7fe87bd8a3559513 (last visited June 6, 2024). The job description states:  "you will be an important contributor to a global account team . . ." *Id.*

manufacturing in the U.S. and New Jersey. This U.S. investment, driven by Givaudan, has allowed Givaudan to gain a significant market share and presence in the U.S. and thus, effectively collude with the Defendants.

## C.    Symrise

While Symrise admits it manufactures fragrances and fragrance ingredients, it claims it lacks sufficient contacts with the U.S. for specific personal jurisdiction. *See* Declaration of Markus Sattler ("Sattler Decl."), ¶¶ 6-19. Yet, Symrise conducts business operations in the U.S. that are directly tied to Plaintiffs' claims. Symrise's Articles of Incorporation outline a broad corporate charter that involves managing and servicing fragrance subsidiaries in the U.S:

> [Symrise's] corporate purpose is to manage a group of companies active primarily in the area of developing, manufacturing, selling and marketing scents . . . and active ingredients . . . . Management also includes provision of services to the group's companies.

Cecchi Decl., Ex. S-1.

To manage its U.S. subsidiaries, Symrise maintains "***regional headquarters*** in [] the United States," including in "Teterboro, New Jersey." Symrise Corporate Report 2023 at p.12 (emphasis added), Cecchi Decl., Ex. S-2. Symrise also oversees an "integrated *corporate strategy*," *id.* at p.17, through which it will "invest about €600 million in property, plants and equipment as well as in intangible fixed assets . . . ." *Id.* at p. 18. Symrise thus directs its U.S. subsidiaries through investments, management, and an integrated corporate strategy.

13

Symrise admits it "is a producer and seller of flavors, fragrances, fragrance ingredients, and raw materials," and does not contest that these products are shipped to and sold in the U.S., primarily through New Jersey. Sattler Decl. ¶ 3. This is further confirmed through public shipping records, which show Symrise regularly ships its products into the U.S. through the port authority of New York/New Jersey. *See* Cecchi Decl., Ex. S-3. These shipments include the Fragrance Products at issue, which are routed to Symrise's affiliates and subsidiaries for U.S. distribution.

Symrise's claim that it does not maintain "offices or permanent employees" in the U.S. is false. *See* Sattler Decl. ¶ 7. LinkedIn profiles for several senior Symrise employees show it has offices in New Jersey and throughout the U.S., including Julianne Pruett, President of Global Fine Fragrance, Robert Pantina, Corporate Counsel, and Stephanie Blakely, Vice President of Global Regulatory Service & Compliance. *See* Cecchi Decl., Ex. S-4. Symrise also has current postings for more than 20 employment positions in the U.S., including a Regulatory Affairs Specialist in Saddle Brook, New Jersey, and a GC Mass Spec Specialist in Teterboro, New Jersey. Cecchi Decl., Ex. S-5.[8]

---

[8] Numerous job openings at Symrise in New Jersey are likewise listed on Indeed.com, including the position of "Manager, Consumer & Market Intelligence." https://www.indeed.com/q-symrise-l-new-jersey-jobs.html?vjk=a4d035e9d9083bac (last visited June 6, 2024). The job entails "provid[ing] strategic, solutions-oriented insights to cross functional regional and global team to ensure actionable insights that result in winning fragrances, concepts and technology opportunities for Symrise." *Id*.

Also false is Symrise's claim that it "has not commenced suit in any court in the United States." *See* Sattler Decl. ¶ 12. As one example, in 2023, Symrise AG filed a petition with the U.S. Patent Trial and Appeal Board challenging certain U.S. patents that allegedly interfered with its U.S. fragrance businesses. *See Symrise AG v. Inolex Investment Corp.*, 2023 WL 6199162 (PTAB Sept. 22, 2023). Cecchi Decl., Ex. S-6. Symrise also brought actions before the U.S. Trademark Trial and Appeal Board to enforce its U.S. trademarks. Cecchi Decl., Ex. S-7.

Symrise likewise seeks the protection of the U.S. Patent and Trademark Office. Symrise owns approximately 178 live U.S. trademarks and has been assigned over 363 U.S. patents. *See* Cecchi Decl., Exs. S-8 (trademark search results) and S-9 (patent search results).

Symrise owns and operates a U.S. website, symrise.com, where it markets products directly to U.S. businesses and consumers under New Jersey law. Cecchi Decl., Ex. S-10 (the domain registration for the symrise.com website, noting that it is owned and maintained by "Symrise AG"). Through its website, Symrise sells fragrance products and also facilitates sales through its subsidiaries in New Jersey. These sales are purportedly governed by a New Jersey choice-of-law and choice-of-

15

venue clause. Cecchi Decl., Ex. S-11.[9] Symrise boasts that it has "35,000+ products" and "6000+ customers," in "150+ countries." *Id*.

Thus, Symrise is not a passive entity; it is actively engaged in managing and servicing its U.S. subsidiaries, providing them intellectual property, and making sales to US-subsidiaries who purchase the Fragrance Products at issues in this litigation.

## D.    FSAC

In addition to their individual U.S. activities, the Moving Defendants operate in the U.S. through a proxy known as the Fragrance Science & Advocacy Council ("FSAC"), a U.S.-based lobbying group. In March 2021, "Firmenich, Givaudan, IFF, and Symrise . . . united to launch [FSAC], a trade association dedicated to advancing responsible science-based public policy in North America." *The Fragrance Science & Advocacy Council asserts the power of science and technical expertise with one year of successes*, March 16, 2022, https://fsac.org/communications/fragrance-science-advocacy-council-asserts-power-science-and-technical-expertise-one.

---

[9] Symrise's "privacy policy" on its website states that "[o]n our websites, you can choose to be contacted by us with information on topics related to Symrise, which may include newsletter, new products information or event invitation (hereinafter referred to as: marketing communication)." https://www.symrise.com/privacy-policy/ (last visited June 6, 2024). The privacy policy further states that "Symrise AG is responsible regarding the use of your contact information for marketing communication on a global scale." *Id*.

While the FSAC promotes itself as a "North American" trade association, it focuses predominately, if not exclusively, on the U.S., where it maintains offices in Washington, D.C. https://fsac.org/contact. Through FSAC, the Moving Defendants "promote, advance, and protect the fragrance industry through advocacy at the federal and state levels" in the U.S. https://fsac.org/about. The Moving Defendants "retain[] lobbyists to examine legal issues at the state and federal levels" and "develop appropriate strategies to address legislative and regulatory changes in the United States affecting fragrance and end products containing fragrance." https://fsac.org/about.

Beyond lobbying, the Moving Defendants also engage in strategic "communication" and "education" in the U.S. through FSAC, purportedly to "defend key fragrance topics of interest and to protect and promote the industry overall." *Id*. For example, the FSAC recently held a workshop in Virginia for "participants representing industry, government, research organizations, and contract laboratories." *FSAC Hosts Dermal Sensitization Workshop*, October 19, 2023, https://fsac.org/communications/fsac-hosts-dermal-sensitization-workshop. The Moving Defendants also use the FSAC to "closely track[] fragrance relevant developments at the US Food and Drug Administration and US Environmental Protection Agency" in order to be "'front and center' in discussions regarding fragrance ingredients." Lauren Nardella, *World's Biggest Fragrance and Flavor*

17

*Firms Join Forces to Champion Science in Public Policy*, HBW INSIGHT (Mar. 31, 2021), https://hbw.pharmaintelligence.informa.com/RS151176/Worlds-Biggest-Fragrance-And-Flavor-Firms-Join-Forces-To-Champion-Science-In-Public-Policy. Thus, the FSAC provides an additional channel through which the Moving Defendants maintain active U.S. operations.

### III.    RULE 12(B)(2) STANDARDS

Whether specific personal jurisdiction exists as to a particular non-resident defendant is governed by a three-part test. "First, the defendant must have purposefully directed [its] activities at the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). Second, "[t]he plaintiff's claims … 'must arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (cleaned up).[10]

---

[10]  The Court "may consider facts outside of the complaint," *Dudhwala v. Choice Hotels Int'l Servs. Corp.*, 2022 WL 4300219, at *4 (D.N.J. Sept. 19, 2022) (citation omitted), and "may rely upon the parties' declarations for relevant factual support," *Redi-Data, Inc. v. Spamhaus Project*, 2022 WL 3040949, at *2 (D.N.J. Aug. 2, 2022) (citing cases). The documents attached to Cecchi Decl. have been properly authenticated by Mr. Cecchi' Declaration. *See* Cecchi Decl. ¶ 43; *see also Pietrangelo v. Refresh Club, Inc.*, 2023 WL 6388880, at *12 (D.D.C. Sept. 29, 2023) ("As to screenshots of a webpage, courts have authenticated screenshots when a witness testifies that she 'saw and printed the posting from the . . . website' as 'long as the screenshots contain circumstantial indicia of authenticity.'") (citing cases).

18

"If the district court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation marks omitted). In such cases, "'a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff.'" *Id*. at 30-31 (citation omitted). "Once the plaintiff has made out a prima facie case in favor of personal jurisdiction," the burden shifts back to the defendant one last time to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable,"[11] including constitutional requirements of Due Process. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992) (citations and quotations omitted)). A plaintiff may plead the basis for personal jurisdiction generally, *see* Wright & Miller, Procedural Aspects of Personal Jurisdiction, 4 Fed. Prac. & Proc. Civ. § 1067.6 (4th ed.), as "Rule 8(a)(1) does not appear to govern the pleading of personal jurisdiction," *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n.38 (3d Cir. 2015) (citing cases).

Applying these standards, the Court has specific personal jurisdiction over the Moving Defendants because (1) each Moving Defendant deliberately targeted New

---

[11] When "[b]oth sides offer [ ] evidence on the personal jurisdiction issue," but "there has not been discovery or an evidentiary hearing, the plaintiff receives the benefit of what amounts to a Rule 12(b)(6) standard." *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214 (D.N.J. 2020).

19

Jersey and the U.S.; (2) Plaintiffs' claims arise from or are related to the Moving Defendants' forum-related activities; and (3) the Moving Defendants failed to demonstrate that the exercise of personal jurisdiction over them would be unreasonable. In addition, the Court has jurisdiction over the Moving Defendants under Fed. R. Civ. P. 4(k)(2), the *Calder* "effects" test, and based on "agency" and conspiracy jurisdiction theories.

## IV.   ARGUMENT

### A.   THE COURT HAS SPECIFIC JURISDICTION OVER THE DEFENDANTS

#### 1.   Federal Rule of Civil Procedure 4(k)(2) and the Specific Jurisdiction Requirements Are Satisfied

Rule (4)(k)(2) permits the exercise of personal jurisdiction over a foreign defendant where (1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the U.S. Constitution and laws. Fed. R. Civ. P. 4(k)(2). "Under this provision, a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole, when the defendant is not subject to personal jurisdiction in any state. Rule 4(k)(2) confers personal jurisdiction over a defendant so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment.'" *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 299 n.14 (3d Cir. 2004) (citation

20

omitted).

### a. The Claim Arises Under Federal Law and the Moving Defendants Are Not Subject to Jurisdiction in Any State Court of General Jurisdiction[12]

First, the federal antitrust claim here arises under federal law. As to the second requirement, the burden is on the defendant to identify a suitable state court forum in which the plaintiff could have brought suit. *See Early Learning Res., LLC v. Sebel Furniture Ltd.*, 2011 WL 4593775, at *6 (D.N.J. Sept. 30, 2011) (citations omitted).[13] Here, the Moving Defendants have not identified any state court of general jurisdiction where "'the plaintiff[s] *could have brought suit*,'" *id.* (emphasis in original) (citation omitted), or that would otherwise have personal jurisdiction over them with respect to Plaintiffs' federal antitrust claim, *see In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 4890594, at *17-18 (N.D. Cal. Oct. 30, 2017) ("where the defendant does not identify a state court of general jurisdiction, the second element is also satisfied"). Nor are Plaintiffs

---

[12] None of the Moving Defendants dispute the first two elements of Rule 4(k)(2).

[13] Courts have held that "a 'piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary. Rather, so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction.' . . . 'If ... the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).'" *Ogden v. GlobalSantaFe Offshore Servs.*, 31 F. Supp. 3d 832, 839-40 (E.D. La. 2014) (quoting *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004)); *see Early Learning Res. LLC*, 2011 WL 4593775, at *6.

21

aware of any such forum. In fact, the Moving Defendants' briefs are replete with arguments that personal jurisdiction over them is lacking in any court in the U.S. *See, e.g.*, Firmenich Defendants' Memorandum of Law in Support of Motion to Dismiss ("Firmenich Mem.") at 12 ("no facts supporting the conclusion that Firmenich Defendants purposefully availed themselves of this forum, whether that be New Jersey or the United States"), *id.* at 14 ("Firmenich Defendants have slim to no contacts with New Jersey or the United States"), *id.* at 14-15, 16, 19-20.

      **b.**    **The Defendants Have Sufficient Contacts with the U.S.**

Under the third prong of the Rule 4(k)(2) analysis, a court analyzes a foreign defendant's contacts with the U.S. as a whole, and whether the exercise of jurisdiction comports with Due Process. Specifically, exercising jurisdiction over the Moving Defendants is consistent with (1) the U.S. Constitution and laws (*i.e.* Due Process) if they have sufficient contacts with the U.S., rather than with any particular state; and (2) the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice. Both are satisfied here. As the Plaintiffs demonstrated above, the allegations and evidence provided plausibly show that the Moving Defendants have sufficient contacts with the U.S. *See supra* at 3-18. The Moving Defendants' arguments to the contrary are thus without merit. *See* Firmenich Mem. at 4-5 & n.5; Givaudan SA's Memorandum of Law in Support of Motion to Dismiss, ECF No. 136-1 ("Givaudan Mem."), at 5-7;

22

Symrise AG's Memorandum of Law in Support of Motion to Dismiss, ECF No. 126-1, at 5, 10.

### c.    Asserting Personal Jurisdiction Comports with Due Process

The assertion of specific personal jurisdiction over the Defendants (both with respect to Plaintiffs' federal and state law claims) is further warranted because it would be consistent with the U.S. Constitution and laws. To satisfy Due Process in the context of specific jurisdiction, Plaintiffs must demonstrate that: (1) the nonresident defendant has either purposefully directed his activities at the U.S. or purposefully availed himself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *See Beychok v. Baffert*, 2024 WL 685551, at *5 (D.N.J. Feb. 20, 2024).

### i.    Purposeful Direction

To meet the "purposeful availment" requirement for the federal and state law claims at issue, "a defendant's physical entrance into the forum is not necessary," but its "contacts … must amount to 'a deliberate targeting of the forum.'" *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009) (quoting *O'Connor*, 496 F.3d at 317). Plaintiffs must "show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id*. at 1025

23

(quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).  Thus, if the sale of a product arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in several or all other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).[14]

### — **Firmenich Defendants**

The Firmenich Defendants purposefully directed their antitrust-related conduct at the U.S. and New Jersey. As discussed above, the allegations and evidence establish that the Firmenich Defendants developed, secured, served and exploited the market for their products in New Jersey and the U.S. through their involvement in, among other things, the manufacturing, patenting, marketing, sale and pricing of their products in the U.S. *See supra* at 3-8. Through these actions there can be no doubt that the Firmenich Defendants' conduct was purposefully directed toward the forum.

---

[14] *See also Ford Motor Co*., 592 U.S. at 363; *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty*., 480 U.S. 102, 112 (1987) ("Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.").

The Moving Defendants do not deny that they indirectly served or exploited the market for their products in the U.S. Accordingly, whether or not the Moving Defendants directly engage in the manufacture or sales of Fragrance Products in the U.S., is largely irrelevant. *See*, *e.g*., Firmenich Mem. at 5 & n.5, 14 & n.12.[15] [R]egardless of whether [other entities such as the Moving Defendants' U.S. subsidiaries] act[] as [the Moving Defendants'] agent[s], subsidiar[ies], intermediar[ies], or, as [the Moving Defendants] assert[], [act as] a 'separate, distinct, and independent corporate entit[y],' . . . the fact remains that [the Moving Defendants] ha[ve] 'systematically served a market in' [New Jersey and the U.S.] for the type of [products] [the sale of which Plaintiffs w[ere] [injured by]." *Patt v. Volkswagen Grp. of Am., Inc*., 2023 WL 5224294, at *5 (S.D. Fla. Aug. 15, 2023)

---

[15] Firmenich argues that it did not "*directly* engage[] in the manufacture or sale of Fragrance Products." Firmenich Mem. at 4, 14 (emphasis added), 17, "does not operate U.S. manufacturing sites," Firmenich Mem. at 14; Declaration of Laetitia Pictet (ECF No. 139) ("Pictet Decl.") ¶ 12, and lacks a physical presence in the U.S., or indicia of a physical presence, Firmenich Mem. at 4, 13-14; Pictet Decl. ¶¶ 6-13. First, these arguments do not deny that, as Plaintiffs' allegations and evidence show, the Moving Defendants *indirectly* engage in the manufacture or sale of Fragrance Products. *See Ford Motor Co.*, 592 U.S. at 363 (reiterating that personal jurisdiction is conferred over manufacturer that "serve[s], directly or *indirectly*, the market" for its product in forum) (emphasis added). Second, these arguments at best amount to a dispute with Plaintiffs' allegations and evidence, in which case the issue must be construed in the Plaintiffs' favor at this stage. *See Shuker*, 885 F.3d at 780. Third, these arguments ignore that physical entry into the forum is not required for personal jurisdiction. *See D'Jamoos*, 566 F.3d at 103; *DCM Grp. Inc. v. Raina*, No. 22-CV-1193, 2022 WL 3588076, at *4 n.4 (D.N.J. Aug. 19, 2022) (citing cases).

(citations omitted).

The record establishes "something more" than the Moving Defendants placing their products into the stream of commerce in Europe. Firmenich Mem. at 15. Plaintiffs allege that the Firmenich Defendants engaged in a conspiracy to set higher prices and to eliminate or suppress competition in the market, through conduct that targeted the U.S.[16] Plaintiffs also allege that the Firmenich Defendants engaged in conduct directed at New Jersey and the U.S. through subsidiaries. *See supra* at 3-8; DPPC ¶¶ 25-28, 32, 33, 35; IPPC ¶¶ 28-29, 31-32, 47-49; EUPC ¶¶ 80-83, 87-88, 90.

"Where the goal of the manipulation is to profit wrongfully from transacting in a product, the places where those transactions occur (not just the places where the price manipulation took place) are jurisdictionally relevant." *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 592 (S.D.N.Y. 2017) (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253 (1940) ("The making of those sales supplied part of the continuous cooperation necessary to keep the conspiracy alive," rendering the sales of price-fixed products jurisdictionally relevant to the conspiracy). Because they "systematically served a market in" New Jersey and the U.S., *Ford*, 141 S. Ct. at 1028, either directly or indirectly, the Moving

---

[16] *See* DPPC ¶¶ 25, 26, 27, 55, 70-75, 105, 106, 124, 131, 195-98, 200-204, 212-13; IPPC ¶¶ 28-29, 31, 73, 98, 101-05, 135-36, 154, 161, 219-24, 252, 255; EUPC ¶ 80-82, 109, 124-29, 159-60, 179, 186, 260-62, 269-318.

26

Defendants cannot avoid personal jurisdiction merely because, as they argue, a subsidiary may directly run those entities. *See, e.g.*, *Patt*, 2023 WL 5224294, at *6; *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 437-38 (D.N.J. 2021).

### — Givaudan

Givaudan contends that "Plaintiffs fail to allege that Givaudan SA engaged in suit-related activity or purposefully directed *any* conduct at New Jersey or the United States." Givaudan Mem. at 12 (emphasis in original). Givaudan's arguments, however, are not based on a record developed through discovery but, instead, on a declaration of Group Counsel for Givaudan International SA, Roberto Garavagno. Garavagno painstakingly swears that Givaudan "has no operational activities," "no employees," "neither directly owns nor leases property of any kind in the United States," "does not maintain an office or any other facility in the United States," "does not maintain a bank account in the United States," and "does not manufacture, distribute, or contract for the sale and supply of Fragrances or Fragrance Products in the United States." Garavagno Decl. ¶¶ 8-14.

First and foremost, many of Garavagno's assertions are contradicted by the evidence. *See supra* at 8-13 (Givaudan manufactures fragrance products; enters into strategic contracts directly with U.S. companies; created a Creative Centre in New Jersey; and advertises job openings in New Jersey). At best, Garavagno's Declaration establishes that Givaudan does not sell, distribute, or market Fragrance

27

Products *directly* to consumers in New Jersey or the U.S., which as discussed above is not dispositive. Indeed, the ability of its subsidiaries in the U.S. to sell, distribute, or market Fragrance products is largely dependent on the intellectual property rights owned by Givaudan and the strategic relationships entered into by Givaudan.

Importantly, a defendant need not have a "staggering number of contacts with a state to have satisfied the requirement that it purposefully availed itself of the privilege of conducting activities within the forum state." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022) (discussing *Ford Motor Co.*, 141 S. Ct. at 1028). Rather, evidence that a defendant "create[d], control[led], or employ[e]d the distribution system that brought its [product] to [the forum]" qualifies as the something "more" that the Supreme Court has held demonstrates purposeful direction toward the forum State. *Asahi*, 480 U.S. at 112. Any other result would permit a foreign corporation to facilitate the manufacture, distribution, marketing and sale of its products in the U.S., profit from it, and yet retain immunity simply by structuring its business operations to avoid the appearance of direct activity in the forum. *See Bachmann Software & Servs. v. Intouch Grp., Inc.*, 2008 WL 2875680, at *11 (D.N.J. July 22, 2008) ("courts in this Circuit have consistently found specific personal jurisdiction in cases, where, as here, the defendants have directed communications into a forum for the purpose of doing business but have refrained from physically entering that forum.").

28

Accepting Plaintiffs' facts as true and drawing all reasonable inferences in their favor, the allegations and evidence describing Givaudan's conduct and contacts shows a *prima facie* case of its purposeful availment of New Jersey. Givaudan deliberately reached out beyond its home and exploited a market in New Jersey. *See Ford Motor Co.*, 141 S. Ct. at 1025. Givaudan's forum contacts are not "'random, fortuitous, or attenuated,'" *id.*, or the mere "unilateral activity of another party or a third person,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The record shows "there is a strong 'relationship among the defendant [Givaudan], the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Ford Motor*, 141 S. Ct. at 1028.

### — **Symrise**

Symrise similarly claims that it did not purposefully target the U.S. or New Jersey. However, there is no reasonable dispute that the fragrance products and ingredients Symrise produces and sells are specifically sent by Symrise to the U.S. and are purchased by U.S. customers, including Plaintiffs. *See supra* at 13-16 (records of shipment to the U.S., including New Jersey; job openings posted in the U.S. and New Jersey; and ownership of U.S. patents and trademarks). These intentional acts are more than sufficient to establish purposeful availment.

### ii.    The *Calder* "Effects" Test.

An alternative method to establish "purposeful direction" in the context of

29

antitrust claims is the three-part "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). This test requires that the defendant must have (1) committed an intentional act; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of that activity. *See Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, 2008 WL 65177, at *6 (D.N.J. Jan. 2, 2008) (discussing *Calder v. Jones*, 465 U.S. 783 (1984), and *Imo Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998)).[17] "Under *Calder*, an intentional tort . . . directed at, and having sufficient impact upon, a forum's plaintiff may enhance otherwise insufficient contacts with that forum." *Patel v. Patel*, 2023 WL 8929199, at *7 (D.N.J. Dec. 27, 2023) (citing *IMO Indus.*, 155 F.3d at 260). In applying the *Calder* effects test, the Third Circuit instructs that the analysis must begin with consideration of the third prong. *Marten*, 499 F.3d at 297 ("Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements.").

---

[17] *See also MaxLite, Inc. v. ATG Elecs., In*c., 193 F. Supp. 3d 371, 384 (D.N.J. 2016) ("When an intentional tort is alleged, a slight variation from the *O'Connor* three-part test applies, known as the *Calder* effects test, *O'Connor*, 496 F.3d at 317 n. 2, stemming from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 . . . (1984). The *Calder* effects test 'can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone [ ] are far too small to comport with the requirements of due process under our traditional analysis.'") (quoting *Marten*, 499 F.3d at 297 (internal quotation marks omitted)).

Under the third prong, plaintiff must show "that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus.*, 155 F.3d at 266. "The special character of an antitrust claim leads th[is] Court to interpret more liberally the phrase 'expressly aim [. . .] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.'" *In re Bulk (Extruded) Graphite Prod.*, 2007 WL 2212713, at *9 (D.N.J. July 30, 2007) (citing *IMO*, 155 F.3d at 266). Thus, this Court has found that evidence of a defendant's worldwide price-fixing conduct, "read liberally," suggests a conspiracy to fix prices in the U.S. as well; hence, such evidence supports a conclusion that a defendant directed acts in furtherance of the conspiracy to the U.S. *See id.* (citations omitted).

### — Firmenich Defendants

As to the third *Calder* prong, Plaintiffs allege that the Firmenich Defendants engaged in a wide-ranging conspiracy to set higher prices and eliminate or suppress competition in the market, through conduct that was calculated to have effects throughout the U.S.[18] Firmenich knew that the Plaintiffs would suffer harm resulting

---

[18] *See* DPPC ¶¶ 25-27, 55, 70-75, 105, 106, 124, 131, 195-98, 200-204, 212-13; IPPC ¶¶ 28-29, 31, 73, 98, 101-05, 135-36, 154, 161, 219-22, 223-24, 252, 255; EUPC ¶¶ 80, 81, 82, 109, 124-29, 159-60, 179, 186, 260-62, 268-318.

from their conduct underlying the conspiracy. *See* DPPC ¶ 197; IPPC ¶ 221; EUPC ¶ 197; *In re Fasteners Antitrust Litig.*, 2011 WL 3563989, at *13 (E.D. Pa. Aug. 12, 2011) (plaintiffs adequately alleged that U.S. was focal point of harm where they argued that defendant "committed intentional antitrust tort, which had domestic effects").[19] These allegations satisfy the third element in the *Calder* "effects test" because they demonstrate that the Firmenich Defendants aimed their tortious conduct at the forum, *i.e.*, the U.S. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 743-44 (9th Cir. 2013), *aff'd*, 575 U.S. 373 (2015); *id.* at 714 ("These alleged facts, taken as true, establish that the AEP Defendants' price manipulation was "expressly aimed" at Wisconsin, because the AEP Defendants knew and intended that the consequences of their price manipulation would be felt in Wisconsin.").

The first element of the *Calder* "effects" test is satisfied because antitrust claims are considered an intentional tort. *See Victory Int'l (USA) Inc.*, 2008 WL 65177, at *6. The second element is met because Plaintiffs are situated in the U.S. and were harmed by the Firmenich Defendants' unlawful conspiracy, which had as

---

[19] *See Kentex Asia Ltd. v. ATT S. Inc.*, 2017 WL 4071389, at *3 (M.D. Pa. Sept. 14, 2017) ("At this early stage, we find ATT's allegation of intentional harm sufficient. 'It would be difficult for [ATT] to allege more facts related to [Kentex's] state of mind ... without the benefit of discovery.' *Cincinnati Ins. Co. v. Markey Builders, Inc.*, 2015 WL 4715249, at *4 (M.D. Pa. Aug. 7, 2015). We find that ATT's allegations raise a reasonable expectation that discovery may reveal evidence of intent to harm.").

its target the fixing of prices for fragrance ingredients and fragrance compounds throughout the U.S.[20] As a result of the Firmenich Defendants' actions, Plaintiffs were forced to pay more for these products than they otherwise would have, thus suffering substantial overcharge damages caused by suppressed competition in the market and reduced choices for purchasers. *Id*. The harm suffered by Plaintiffs as a result of the Firmenich Defendants' anticompetitive activity was felt within the U.S. *See Victory Int'l (USA) Inc.*, 2008 WL 65177, at *7; *In re Bulk (Extruded) Graphite Prod.*, 2007 WL 2212713, at *10 ("Because they purchased the defendants' products in the United States, the Court finds that plaintiffs have met their burden and shown that the members of the plaintiff class suffered the brunt of their harm here."); *In re Mid-Atlantic Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1270 (D. Md. 1981) (antitrust injury occurs where consumer pays artificially inflated price), *aff'd,* 704 F.2d 125 (4th Cir. 1983).

The Moving Defendants repeatedly challenge Plaintiffs' allegations concerning personal jurisdiction on the ground that they lack the particularity and specificity required by Federal Rule of Civil Procedure 9(b). *See* Firmenich Mem. at 2, 5 n.5, 13, 14, 16 & n.15; Givaudan Mem. at 8-9, 13, 14-15, 18; Symrise Mem. at 10-11, 12, 13-14. But as noted above, Rules 8 and 9 do not apply and Plaintiffs are

---

[20] *See* DPPC ¶¶ 25-27, 55, 71-75, 105, 106, 124, 131, 196-98, 200-204, 212-13; IPPC ¶¶ 28-29, 31, 73, 101-05, 135-36, 154, 161, 220-24, 252, 255; EUPC ¶¶ 80-82, 109, 125-29, 159-60, 179, 186, 260-62, 268-318.

permitted to plead the basis for personal jurisdiction generally. And even if Rules 8 and 9 governed, Plaintiffs' allegations are alleged with sufficient plausibility to satisfy Rule 12(b)(2). Moreover, the Firmenich Defendants' argument that Plaintiffs must establish Firmenich's physical presence in the U.S. ignores that Clayton Act jurisdiction and the *Calder* test focus on the anticompetitive acts of the defendant and whether the effects of that conduct reach and impact those within the forum. It is indisputable that the Firmenich Defendants' anticompetitive conduct will have an effect wherever their products are sold, namely, throughout the U.S.

### — Givaudan

For the same reasons, Givaudan's conduct likewise satisfies the *Calder* test.[21] Givaudan's reliance on *In re Diisocyanates Antitrust Litig.*, 2020 WL 1140245, at *5 (W.D. Pa. Mar. 9, 2020), at Givaudan Mem. 14, is unavailing. There, the court agreed that the defendant's contacts with the U.S. as a whole was the pertinent inquiry and only found they presented "no evidence" and, instead, solely relied on the generalized allegations of the complaint. *Id*. at *26. Here, Plaintiffs have introduced substantial evidence that Givaudan purposely avails itself of the laws and protections of the U.S. *See supra* 8-13. Plaintiffs' allegations and evidence are sufficient to survive a motion to dismiss.

---

[21] Givaudan makes no arguments related to the first two elements of the *Calder* effects test.

**— Symrise**

The same analysis applies to Symrise, which also claims that it lacks contacts with the U.S. as a whole and New Jersey in particular and likewise relies on *Diisocyanates* and the same or similar arguments presented by Firmenich and Givaudan. Thus, Plaintiffs adequately meet the *Calder* test for purposes of establishing the "purposeful direction" ground for their antitrust claim.

### iii.   Plaintiffs' Claims Relate to the Defendants' Forum Directed Contact

**— Firmenich Defendants**

The Firmenich Defendants misapply the law on this requirement. They cite and quote *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 263 (2017), Firmenich Mem. at 17, but ignore the Supreme Court's more recent ruling that a strict causal relationship is not required to satisfy the "arises out of or relates to" standard, and that the standard, therefore, permits but does not require a showing of but-for causation. *See Ford Motor Co.*, 592 U.S. at 361-62. The Firmenich Defendants further conjure up additional rules that do not apply[22] and cite pre-*Ford Motor Co.* decisions to support their argument. *See* Firmenich Mem. at 17. In relying on *In re Chocolate Confectionary Antitrust Litig.*,

---

[22] *See* Firmenich Mem. at 17 (arguing that Plaintiffs must "allege facts" showing that the Firmenich Defendants "directly furthered the . . . conspiracy via actions in the United States," and that the "jurisdictional allegations in price-fixing cases must relate to the pricing of the products").

602 F. Supp. 2d 538, 559 (M.D. Pa. 2009), Firmenich Mem. at 17, the Firmenich Defendants apply the very causal connection requirement that *Ford Motor Co.* rejected. Specifically, *Chocolate Confectionary*, 602 F. Supp. 3d at 538, relied upon *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007), which set forth such a requirement. *See id.* ("requir[ing] a closer and more direct causal connection than that provided by the but-for test"). But as courts have recognized, *Ford Motor Co.* rejected the requirement that plaintiffs show a causal connection between their claims and a defendant's forum-related conduct. *See Rickman*, 538 F. Supp. 3d at 441 (D.N.J. 2021) ("I hold that the Third Circuit's causation requirement [in *O'Connor*] cannot be reconciled with *Ford*."); *Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 574-76 (Tenn. 2023) ("the language used by the Court [in *Ford Motor Co.*] effectively did abrogate any approach that required a causal connection").

Faced with this abrogated law, the Firmenich Defendants' argument that Plaintiffs must allege they "had a role in setting prices for Fragrance Products manufactured or distributed in the United States," Firmenich Mem. at 17, is unpersuasive. First, Plaintiffs plausibly show this through their allegations and evidence. *See supra* at 3-18. Second, this argument erroneously applies a but-for causation standard that no longer applies. Rather, as *Ford Motor Co.* held, a claim can relate to forum-related contacts, even absent causation, where, for example, "a

36

company . . . serves a market for a product in the forum State and the product malfunctions there." *Ford*, 141 S. Ct. at 1026-27. As demonstrated above, the Firmenich Defendants plainly served, directly or indirectly, the market in New Jersey and the U.S. for the Fragrance Products.[23]

### — Givaudan

Givaudan argues that Plaintiffs cannot show that their claims arise out of or relate to its conduct directed towards the U.S. or New Jersey because there are no allegations that "Givaudan SA—as opposed to its operating subsidiaries—issued, or made the decision to issue, price increases here." Givaudan Mem. at 15.

As with Firmenich, the argument that Givaudan must have issued price increases in New Jersey in order to be subject to specific personal jurisdiction improperly seeks to impose a strict causal relationship between Plaintiffs' claims

---

[23] *See In re Capacitors Antitrust Litig.*, 2015 WL 3638551, at *3 (N.D. Cal. June 11, 2015) ("Without a doubt, plaintiffs' claims in these antitrust actions arise out of and are related to the sale of NCC's capacitors in the United States and NCC's alleged participation in the alleged capacitor price-fixing conspiracies."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 2581525, at *8 (N.D. Cal. June 9, 2014) ("The Court finds that Plaintiffs have established this nexus by pleading that they paid artificially high prices in the United States for CRT Products, and that the prices were set by PTL and PDBL during Glass Meetings and in other United States-directed actions"); *cf. Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institucion de Banca Multiple*, 92 F.4th 450, 459-60 (2d Cir. 2024) (relatedness prong satisfied because defendant's forum contacts involving sales of defendant's products to plaintiffs through defendant's agents were sufficiently related to price-fixing scheme, even though manipulation of prices took place overseas).

and the forum, which the Supreme Court rejected in *Ford Motor Co.*

Givaudan also ignores that Plaintiffs' claims relate to Givaudan's contacts with the U.S. as a whole and New Jersey in particular, through its investment in the Creative Center, acquisition of several New Jersey-based companies, engagement with the federal government including the PTO and through its lobbying entity FSAC. The record here shows that Givaudan, acting through and in conjunction with its U.S. subsidiaries, extensively and systematically served all markets in the U.S., including New Jersey, for the very Fragrance Products that Plaintiffs allege Givaudan and the other co-Defendants conspired to artificially fix, raise or maintain the prices on.[24] Thus, the claims of the Plaintiffs plausibly arise out of, or relate to, Givaudan's forum-related activities.

### — Symrise

Symrise argues that Plaintiffs cannot show that their claims arise out of or relate to its conduct directed towards the U.S. or New Jersey because there are no

---

[24] *See Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*, 253 F. Supp. 3d 1115, 1129 (D. Or. 2017) (finding personal jurisdiction over out of state defendant who "sends parts, information, advice, and advertisements to Oregon, including advice . . . relating to the [part] at issue in this lawsuit," because "[t]o find otherwise would allow a company to solicit business in a foreign state, maintain longstanding business relationships and obligations, and engage in many telephone calls and email communications directed to the forum state in furtherance of those business relationships, but then avoid personal jurisdiction simply by hiring an agent who is out-of-state and who does not travel to the forum").

allegations that "Symrise AG—as opposed to its operating subsidiaries—issued, or made the decision to issue, price increases here." Symrise Mem. at 13.

As with the other Moving Defendants, the argument that Symrise must have issued price increases in New Jersey, relying on *Bristol-Myers Squibb*, in order to have specific personal jurisdiction improperly seeks to impose a strict causal relationship between the Plaintiffs' claims and the forum. Here, Symrise produces and sells fragrance products, which directly or indirectly enter the U.S., maintains a regional headquarter in New Jersey, and has plans to continue to invest heavily into new developments in the U.S. These actions by Symrise allowed it to obtain the market share it has and placed Symrise in a position to conspire with other Defendants on fixing, maintaining and/or raising prices of Fragrance Products in the U.S.

    **2.**     **Moving Defendants fail to satisfy the heavy burden of demonstrating that the Court's exercise of personal jurisdiction is unreasonable**

The Moving Defendants fail to meet their heavy burden of presenting a *compelling* case that the exercise of jurisdiction over them would be unreasonable. *O'Connor*, 496 F.3d at 324. For example, the Firmenich Defendants cursorily argue that they "would face a substantial burden if required to defend themselves half a world away in a state in which they do not operate." Firmenich Mem. at 20. Notably, the Moving Defendants' arguments are unsupported by any evidence and fail to offer specific reasons why the Moving Defendants, as opposed to any other out-of-country

entity, would be burdened by litigating in the U.S. That is insufficient. *See Miller Yacht Sales, Inc.*, 384 F.3d at 100 ("There is no compelling evidence of record why it would be unfair or unjust for Appellees to litigate this dispute in New Jersey. Without such compelling evidence, they cannot avoid the District Court's appropriate jurisdiction.").

The Firmenich Defendants also argue that "the vast majority of evidence and witnesses would be located in Switzerland," and that exercising jurisdiction over them "would impede upon Swiss sovereignty." Firmenich Mem. at 20. But this generic argument could apply to any defendant located outside of the U.S. and has been repeatedly rejected by this Court. *See, e.g.*, *M&B IP Analysts, LLC v. Cortica-US, Inc.*, 2020 WL 3411027, at *5 (D.N.J. June 22, 2020) ("[A]lthough litigating in a foreign country would undoubtedly burden Cortica, LTD, the Supreme Court has explained that when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.") (citations and quotation marks omitted). Moreover, "this factor is no longer weighed heavily given the modern advances in communication and transportation." *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 704 (C.D. Cal. 2022) (citation omitted).

The Moving Defendants have also litigated in the U.S. previously, both as

40

plaintiffs and defendants, and they have offered no reasoning as to why this case is different. *See supra* at 6, 7, 12, 15. This supports an inference that the Moving Defendants have some familiarity with the U.S. legal system and likely have counsel here (and have retained U.S. counsel for this matter). As large corporations with activities throughout the world, the burden on the Moving Defendants in litigating outside of Europe is limited. In contrast, the burden on Plaintiffs of litigating in Europe, would be significant. None of the Plaintiffs are alleged to have any connection to that forum

In addition, Plaintiffs' evidence shows that senior executives of the Moving Defendants visit their locations in the U.S. *See supra* at 7; *cf. Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132-33 (9th Cir. 2003) (no undue burden on defendant to litigate in California where its employees "frequently travel to California on business").

Moreover, the U.S. has a substantial interest in (1) giving its citizens a forum to vindicate their legal interests arising from the impact of the Moving Defendants' price-fixing scheme in the U.S.; and (2) in regulating the Moving Defendants' forum-targeted conduct as the launchpad for a scheme that causes harm to citizens of the U.S. *See Opheim v. Volkswagen Aktiengesellschaft*, 2021 WL 2621689, at *6 (D.N.J. June 25, 2021).[25] Likewise, Plaintiffs have an interest in litigating here

---

[25] Givaudan conveniently ignores that it recently litigated multiple related cases right

because they are U.S. residents.[26] And because this Court will already be trying Plaintiffs' claims against the Moving Defendants' subsidiaries, it is more efficient to also try Plaintiffs' claims against the Moving Defendants, which arise out of the same factual background.

Finally, another jurisdiction's interest in regulating the Moving Defendants' conduct, or the rights and liabilities of its citizens, is no greater than the interest of the U.S. in regulating a price-fixing scheme that adversely impacts its residents. At best, the interest between the two fora, the U.S. and Europe, are split fairly evenly.

The Firmenich Defendants further argue that exercising jurisdiction over them "would impede upon Swiss sovereignty and contravene Supreme Court guidance . . . ." Firmenich Mem. at 20. But this Court expressly rejected that argument:

---

next door in New York involving the dispute with Conagen. Givaudan also fails to consider the evidence establishing its ongoing, substantial relationship with New Jersey—which serves as its focal point into the U.S. fragrance market and did not occur by chance but as part of its strategic growth plans involving investment into the Creative Center and acquisition of New Jersey companies. As discussed above, Givaudan very likely has more contacts with New Jersey than any other state in this country given its extensive focus and investment within the state. Symrise similarly ignores that has a regional headquarter in New Jersey, U.S. based employees, sales in the U.S. and actively engages with the Trademark/Patent Trial and Appeal Boards in the U.S.

[26] *Cf. Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 188 (3d Cir. 2011) ("WR has failed to make a compelling case that litigation in New Jersey would be unreasonable and unfair. The [plaintiffs], their doctors, and several other witnesses all live in New Jersey. New Jersey has an interest in providing effective means of redress when foreign corporations reach into the state and transact business with its citizens.") (citations and quotation marks omitted).

"Although '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field[,]' *Asahi,* 480 U.S. at 115, . . . the cases are 'rare . . . in which minimum requirements in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'" *A.V. Imports, Inc.*, 171 F. Supp. 2d at 375 (quoting *Asahi*, 480 U.S. at 116) (Brennan, J., concurring)). The Moving Defendants fail to present any evidence that any European jurisdictions have an interest in this litigation. "Further, 'there is no conflict with the sovereignty of' a foreign country where the plaintiffs 'bring [their] case for conduct that was specifically targeted at the United States, based on [the defendant's] alleged violation of U.S. law.'" *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d at 704 (citation omitted). Because the factors either weigh toward exercising personal jurisdiction or are neutral, this case is not one of those "rare" or "compelling" cases where jurisdiction would be unreasonable despite the presence of minimum contacts. *O'Connor,* 496 F.3d at 325. Accordingly, the Moving Defendants have not met their heavy burden to present a "compelling case" that the exercise of jurisdiction over it would be unreasonable or would not comport with traditional notions of fair play and substantial justice.

**B.    THE DEFENDANTS ARE SUBJECT TO SPECIFIC JURISDICTION UNDER THE THEORY OF "AGENCY"**

In *D'Jamoos*, 566 F.3d at 108-09, the Third Circuit held that a Swiss aircraft

manufacturer could be subject to jurisdiction in the forum where its American subsidiary/distributor was located. *Id.* at 109. The Court reasoned that the subsidiary's function was to "enable[ ] [the manufacturer] to reach the large United States market," a critical component of its global business. *Id.*

The same can be said here. The record, as discussed above, and the allegations demonstrate that the Moving Defendants' parental control over their agents—(1) DSM-Firmenich AG or Firmenich International SA over Firmenich Inc. and Agilex Flavors & Fragrances (collectively, the "Firmenich Subs"); (2) Givaudan SA over Givaudan Fragrances Corporation, Ungerer & Company, Inc., and Custom Essence LLC (collectively, the "Givaudan Subs"); and (3) Symrise AG over Symrise Inc. and Symrise US LLC (collectively, the "Symrise Subs")—pervaded the Moving Defendants' dealings with the forum, and therefore their subsidiaries' contacts with the U.S. and New Jersey to be imputed to the Moving Defendants for the purpose of assessing specific jurisdiction. *See* DPPC ¶¶ 21-35; IPPC ¶¶ 28-42; EUPC ¶¶ 76-90.

The Moving Defendants serve the U.S. market through their U.S.-based subsidiaries. There are no Defendant-made products sold in the U.S. other than those that the Moving Defendants make available through their respective subsidiary relationships. The Firmenich Subs, Givaudan Subs, and Symrise Subs were established by the Moving Defendants, which entailed a deliberate choice to enter the U.S. and New Jersey. "Given the intense focus and investment [the Moving

44

Defendants] put[] on the American market, significant coordination between the two is plausible. Because [the Moving Defendants' Subs are] . . . in New Jersey, [the Moving Defendants] cannot say that [their] contacts with New Jersey [and the U.S.] are 'random, isolated, or fortuitous.'" *Rickman*, 538 F. Supp. 3d at 438 (quoting *Ford*, 141 S. Ct. at 1024). Moreover, "[a]lthough . . . [the Defendants] and [their] U.S.-based subsidiaries] are legally separate entities, this does not insulate [the Defendants] from a finding that [they] ha[ve] purposefully availed [themselves] of the privileges and responsibilities of conducting business in [New Jersey]." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1239 (S.D. Fla. 2021). Finally, "[m]any courts have held that a foreign manufacturer that utilizes an American subsidiary to target distribution of its product to the forum state is appropriately subject to those states' jurisdiction." *Id*. (citing cases); *see also Patt*, 2023 WL 5224294, at *5.

## C.    "CONSPIRACY" JURISDICTION

Even assuming *arguendo* that the Moving Defendants did not purposefully direct their conduct at the U.S., personal jurisdiction is still proper based on the activities of the alleged co-conspirators, including the Moving Defendants' Subs. *See* DPPC ¶¶ 27, 33-35, 67, 185; IPPC ¶¶ 31, 47-49, 95, 234; EUPC ¶¶ 82, 88-90, 121, 233-34. Where the basis for a defendant's minimum contacts with the U.S. is a conspiracy theory of jurisdiction, "the in-forum acts of co-conspirators can be

45

attributed to an out-of-forum defendant in certain circumstances." *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011). Under this theory, a "plaintiff must plausibly allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a [forum] to subject that co-conspirator to jurisdiction in that [forum]." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 122 (2d Cir. 2021) (alterations in original) (internal quotation marks omitted). "That is not a difficult requirement to meet: '[a]n overt act is any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy.'" *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 271 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024).  Plaintiffs have satisfied this test here through their allegations and evidence. *See* DPPC ¶¶ 25-28, 33-35, 67, 185; IPPC ¶¶ 28-29, 31-32, 47-49, 95, 234; EUPC ¶¶ 80-83, 88-90, 121, 233-34; *supra* at 3-18, which demonstrate, among other things, that the Firmenich Subs, Givaudan Subs, and Symrise Subs and other co-conspirators sold the price-fixed products in the U. S. *See In re Diisocyanates Antitrust Litig.*, 2020 WL 1140245, at *4 n.6 (W.D. Pa. Mar. 9, 2020) ("The selling of a price-fixed product may qualify as an overt act in furtherance of a conspiracy.") (citation omitted).[27]

---

[27] The Moving Defendants argue that the Third Circuit does not recognize conspiracy jurisdiction. *See* Firmenich Mem. at 19 n.19; Symrise Mem. at 18-19; Givaudan Mem. at 20 n.7. They cite to *LaSala v. Marfin Popular Bank Pub. Co.*,

46

## D.   THERE IS NO IMPERMISSIBLE GROUP PLEADING

The Moving Defendants also argue that the Plaintiffs impermissibly lump them together with their subsidiaries or affiliates. Firmenich Mem. at 2-3, 15-16 & n.15; Givaudan Mem. at 8-9, 12; Symrise Mem. at 11-12. That argument fails for three reasons. *First*, the Complaint does not improperly lump the Moving Defendants together but, rather, adequately distinguishes their roles. *See* DPPC ¶¶ 21-24, 25-28; IPPC ¶¶ 28-29, 31-32, 34-37; EUPC ¶¶ 76-79, 80-83; *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *9 (D.N.J. Aug. 29, 2018) (rejecting similar "lumping" arguments).

Second, this argument is moot because Plaintiffs supplemented their allegations with factual material (as permitted under Rule 12(b)(2)) clarifying and identifying the responsible parties and their distinctive roles. *See supra* at 3-18; *see also Schork Grp., Inc. v. Choice! Energy Servs., Retail*, *LP*, 2022 WL 2905231, at

---

410 F. App'x 474, 478 (3d Cir. 2011), where the court in an unpublished and non-binding decision declined to apply this theory based on its "predict[ion] [that] the New Jersey Supreme Court would decline to adopt such a theory of personal jurisdiction." *Id*. at 478. But *LaSala*'s rationale would apply, if at all, only where state law claims are at issue. Here, by contrast, where Plaintiffs assert conspiracy jurisdiction for purposes of their federal antitrust claim in conjunction with the federal long arm statute, Rule 4(k)(2), New Jersey law and New Jersey's long arm statute have no application. *See Rudersdal v. Harris*, 2022 WL 263568, at *10 (S.D.N.Y. Jan. 28, 2022) ("Under Rule 4 (k) (2), there is no limitation that would exclude an application of a conspiracy theory of jurisdiction"); *see also Galloway v. Martorello*, 2023 WL 5183204, at *9 (E.D. Va. Aug. 11, 2023) (citing cases). *La Sala* is therefore inapposite.

47

*5 (E.D. Pa. July 21, 2022) ("'lump[ing]" "argument is belied" in part by "the declarations").

*Third*, where a manufacturer is organized into entities at the international, national, and sub-national levels, a plaintiff need not allege, because it may not be possible to do so, the specific conduct of each entity to meet Rule 8 & 9(b) standards (if those standards even apply). *See In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *22 (D.N.J. Mar. 31, 2021) (recognizing general rule against group pleading but holding that "because this case involves 'an alleged fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other, [Plaintiff] need not distinguish the specific roles that each entity played in the fraudulent concealment in order to meet the Rule 9(b) standard.'") (*quoting Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 226 (D.N.J. 2020)).[28]

This Court has in fact rejected similar complaints of alleged group pleading against other international manufacturers and distributors. *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *9-10 (D.N.J. May 8, 2017) ("Plaintiffs cannot be expected to know the exact corporate structure and degree of

---

[28] *See also Yu-Chin Chang v. Upright Fin. Corp.*, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020) ("The precise relation between the two defendants is not a fact in control of the plaintiffs, but can easily be explored in discovery."); *Gray v. BMW of N. Am., LLC*, 2014 WL 4723161, at *2 (D.N.J. Sept. 23, 2014) ("BMW AG's argument that the Plaintiffs failed to meet the Rule 9(b) standard by not specifying how BMW AG's acts differed from BMW NA's acts is not persuasive."); *Merkin v. Honda N. Am., Inc.*, 2017 WL 5309623, at *7 (D.N.J. Nov. 13, 2017) (same).

48

each Defendant's involvement, at this stage in the litigation and prior to discovery");

*id.* (rejecting claim that complaint did not meet Fed. R. Civ. P. 8 & 9(b) standards due to purported "lumping" of VW entities). Instead, facts "involving the internal doings of a sophisticated corporation" are "properly to be determined through discovery, not on a motion to dismiss." *Gray v. BMW of N. Am., LLC*, 2014 WL 4723161, at *3 (D.N.J. Sept. 23, 2014). As in *In re Volkswagen Timing*, the Complaint puts the Moving Defendants on notice of their wrongdoing, and "to the extent Plaintiffs assert common allegations as to [the Defendants collectively], it is because the entities are intertwined through a complex corporate structure." 2017 WL 1902160, at *9.

*Fourth*, the Moving Defendants also overlook that the "Rules of Civil Procedure are premised on the idea that pleadings should be simple and focused on providing notice," *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1056 (E.D. Mich. 2018), and that "[g]roup pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Targetti Sankey S. P. A.*, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015).[29]

---

[29] *See also Carrado v. Daimler AG*, 2018 WL 4565562, at *4 (D. Colo. Sept. 24, 2018) ("[C]ourts have allowed pleading against a collective group of defendants where it would be 'unfair to require Plaintiff to … identify which specific Defendant committed which specific act during the incident in question … based on the circumstances alleged'" and that "MBUSA is a wholly- or partially-owned subsidiary of Daimler makes it more reasonable for Plaintiffs to allege common allegations against the two remaining Defendants") (citations omitted).

Plaintiffs' allegations and evidence provide such fair notice. Similarly, the Moving Defendants ignore that claims involving omissions are held to less rigorous standards of pleading. *See Yagudayev v. BMW of N. Am., LLC*, 2020 WL 6689799, at *8 (D.N.J. Nov. 13, 2020) (citing cases); *Duramax*, 298 F. Supp. 3d at 1056-57. Plaintiffs satisfy this relaxed standard by alleging that Defendants concealed their conspiracy.  DPPC ¶¶ 178-84; IPPC ¶¶ 227-34; EUPC ¶¶ 235-241.

## E.    ALTERNATIVELY, THE COURT SHOULD GRANT JURISDICTIONAL DISCOVERY

In the alternative, if the Court is inclined to grant any of the Moving Defendants' motions to dismiss, it should permit jurisdictional discovery. "[I]f the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Metcalfe*, 566 F.3d at 336. "[J]urisdictional discovery is particularly appropriate where the defendant is a corporation." *Id*. Given the evidence adduced thus far by Plaintiffs concerning the Moving Defendants' direct activities within the U.S., Plaintiffs present at least a *prima facie* basis for the Court's exercise of personal jurisdiction. Therefore, at a minimum, Plaintiffs should be permitted a reasonable opportunity to take discovery about Moving Defendants' involvement with the claims at issue.[30]

---

[30] *See, e.g., Opheim*, 2021 WL 2621689, at *3, 19 (jurisdictional discovery permitted where facts plausibly indicated possible deliberate targeting of forum and

## V.    CONCLUSION

For the foregoing reasons, the Court should deny the motions to dismiss of Defendants DSM-Firmenich AG, Firmenich International SA, and Firmenich SA; Givaudan SA; and Symrise AG.[31]

Dated: June 7, 2024

Respectfully submitted:

/s/ James E. Cecchi
James E. Cecchi
**CARELLA, BRYNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com

*Interim Liaison Counsel for Direct Purchaser Plaintiffs*

Hilary Scherrer
**HAUSFELD LLP**

---

"collaborative relationship . . . attuned to the needs and realities of the American market"); *Rickman* 538 F. Supp. 3d at 443 (discovery warranted to develop foreign manufacturer contact with American company); *Philadelphia Contribution Ship Ins. Co. v. Neoteric Sols. Inc.*, 2016 WL 791427, at *2 (D.N.J. Feb. 5, 2016) (jurisdictional discovery warranted where facts possibly indicated that foreign defendant conducted business in forum through local agent), *report and recommendation adopted*, 2016 WL 780570 (D.N.J. Feb. 24, 2016).

[31]   In the event the Court grants Moving Defendants' motion for any reason, Plaintiffs respectfully request leave to amend. *See, e.g.*, *In re Synchronoss Techs., Inc. Sec. Litig.*, 2020 WL 3118749, at *7 & n.6 (D.N.J. Jun. 12, 2020) ("[C]onsistent with [Fed. R. Civ. P.] 15's directive that 'court[s] should freely give leave when justice so requires,' I find that dismissal without prejudice is appropriate in this case, and Plaintiff should be permitted to file an amended complaint with more particularized facts, to the extent it is possible to do so.") (citations omitted).

51

888 16th Street NW, Suite 300
Washington, DC 20006
Tel.: (202) 540-7200
hscherrer@hausfeld.com

Christopher M. Burke
**KOREIN TILLERY P.C.**
707 Broadway, Suite 1410
San Diego, CA 92101
Tel.: (619) 6225-5620
cburke@koreintillery.com

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1133 Avenue of the Americas
31st Floor
New York, NY 10036
Tel.: (917) 438-9189
lnussbaum@nussbaumpc.com

*Interim Co-Lead Class Counsel for the Direct Purchaser Plaintiffs*

*/s/ Joseph J. DePalma*
Joseph J. DePalma
Catherine B. Derenze
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com
cderenze@litedepalma.com

Mindee J. Reuben
Steven J. Greenfogel
**LITE DEPALMA GREENBERG & AFANADOR, LLC**

52

1515 Market Street - Suite 1200
Philadelphia, PA 19102
Tel: (267) 519-8306
MJR Direct Dial: (215) 704-2525
Fax: (973) 623-0858
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

*Interim Liaison Counsel for Producer
Indirect Purchaser Plaintiffs*

Michael J. Flannery
**CUNEO, GILBERT & LADUCA, LLP**
Two City Place Drive
St. Louis, MO  63141
Tel: (314) 226-1015
mflannery@cuneolaw.com

Evelyn Riley
Daniel Cohen
Lissa Morgans
Cody McCracken
**CUNEO, GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Tel.: (202) 789-3960
evelyn@cuneolaw.com
danielc@cuneolaw.com
lmorgans@cuneolaw.com
cmccracken@cuneolaw.com

Michelle J. Looby
Daniel E. Gustafson
Daniel C. Hedlund
Frances Mahoney Mosedale
Bailey Twyman-Metzger
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402

53

Tel: (612) 333-8844
Fax: (612) 339-6622
mlooby@gustafsongluek.com
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com
btwymanmetzger@gustafsongluek.com

Dennis J. Stewart
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 595-3299
Fax: (612) 339-6622
dstewart@gustafsongluek.com

*Interim Co-Lead Class Counsel for
Producer Indirect Purchaser Plaintiffs*

Jon A. Tostrud
Anthony M. Carter
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Tel.: (310) 278-2600
Fax: (310) 278-2640
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

Timothy D. Battin
Christopher V. Le
**BOIESBATTIN LLP**
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel.: (703) 764-8700
Fax: (703) 764-8704
tbattin@boiesbattin.com
cle@boiesbattin.com

54

*Interim Producer Indirect Purchaser Plaintiffs' Steering Committee*


By: */s/ Michael D. Fitzgerald*
Michael D. Fitzgerald
**LAW OFFICES OF MICHAEL D. FITZGERALD**
1 Industrial Way West, Unit B
Eatontown, NJ 07724
P.O. Box 1067
Oakhurst, NJ 07755
(202) 349-1482
mdfitz@briellelaw.com

*Interim Liaison Counsel for the End-User Plaintiffs*


Kellie Lerner
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
(212) 980-7400
klerner@robinskaplan.com


Kimberly A. Justice (*pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6487
kjustice@fklmlaw.com

*Interim Co-Lead Class Counsel for End-User Plaintiffs*


55